[Cite as *State v. Wade*, 2017-Ohio-1319.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

      v.

RICHARD M. WADE, JR.,

    DEFENDANT-APPELLANT.

CASE NO. 13-16-23

O P I N I O N

Appeal from Seneca County Common Pleas Court
Trial Court No. 15-CR-0229

Judgment Affirmed

Date of Decision:  April 10, 2017

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Angela M. Boes* for Appellee

**WILLAMOWKSI, J.**

**{¶1}** Defendant-appellant Richard M. Wade, Jr. ("Wade") brings this appeal from the judgment of the Court of Common Pleas of Seneca County finding him guilty of trafficking in drugs and possession of counterfeit controlled substances. On appeal Wade challenges the denial of his motion to suppress. For the reasons set forth below, the judgment is affirmed.

**{¶2}** On October 23, 2015, Officer Nathan Elliott ("Elliott") observed a silver car parked on the cul de sac in front of a home from which it was suspected that drug trafficking was occurring. February 18, 2016, Tr. 13. He had received information that a person by the name of "Rich" was supplying drugs to dealers in Fostoria. *Id*. at 13. He then observed a black male walking from the vicinity of the home and Elliott suspected that "some type of transaction had taken place." *Id*. at 14. When the vehicle subsequently passed Elliott's location, he noted that the "front windows were tinted and in such a manner that you couldn't see anybody." *Id*. Elliott then began following the vehicle. *Id*. The driver of the vehicle

> **activated their left turn signal to turn south on Union Street. Once they arrived at the stop sign, they came to a complete stop. They then activated their right turn signal and proceeded northbound onto Union Street.**

*Id*. Elliott then activated his overhead lights and began a traffic stop at approximately 4:05 p.m. *Id*. at 14-15. K-9 assistance was requested due to the suspected drug activity. *Id*. at 15.

**{¶3}** Upon approaching the vehicle, Elliott learned that the driver was Brenda Hoose ("Hoose") and the passenger identified himself as Rich. *Id.* Elliott suspected that this was the person about whom the confidential informants had previously told the drug task force. *Id.* at 15-16. The passenger later gave his full name as Richard Wade Jr. *Id.* at 16. Elliott informed Hoose that he had stopped the vehicle due to the turn signal change and for the window tint. *Id.* Hoose told the officer that she had turned right instead of left because of a train to the left. *Id.* Elliott noted that Wade appeared nervous and was very fidgety. *Id.* at 17.

**{¶4}** While Elliott was running Hoose's information to verify that her license was valid and to issue the citation, Officer Brandon Bell ("Bell") arrived with his canine, Ricky, and walked Ricky around the exterior of the vehicle. *Id.* at 18. Bell arrived within one minute of the stop being initiated. *Id.* at 19. Elliott was still waiting on dispatch to return the results of his inquiries on identity and the vehicle at that time. *Id.* at 20. Checking the identity of the driver and the passengers was standard procedure. *Id.*

**{¶5}** During the time Elliott was waiting for dispatch to provide him with the verification of identity, Ricky alerted to "the presence of narcotic odors inside or around the vehicle." *Id.* Both Hoose and Wade were asked to exit the vehicle and Elliott conducted a pat down frisk on Wade for the purpose of officer safety. *Id.* Elliott testified to the search as follows.

**When I was conducting the Terry pat on Mr. Wade, I started on the right side. And as I started on the left side, as I was coming up the inside of his leg, I felt an item. My hand hit the item, actually, and made a crunching sound. And then grabbed that item and it was obvious at that time that it was an item that was inconsistent with any type of human anatomy. Then placed [sic] Mr. Wade in restraints and he advised me that I could take the item out. At that time I shook his pants until the item fell out of his pants and I observed that [sic] what appeared to be a large bag of prescription pills. It was in a clear plastic baggie.**

*Id*. at 20-21. The pills were later identified as 230 Percocets and 30 Xanax. *Id*. at 21-22. When asked, Wade admitted that he did not have a prescription for them. *Id*. at 22. Wade was then arrested for drug trafficking. *Id*. Elliott then further searched Wade incident to his arrest and found $2,000 in small denomination bills and four cell phones. *Id*. The drugs, cash, and phones were confiscated as evidence. *Id.* Hoose was issued a citation and released. *Id*. at 24-25.

{¶6} On October 26, 2015, a complaint was filed in the municipal court alleging that Wade had committed the offense of trafficking in drugs. Doc. 1. Wade was bound over to the Seneca County Court of Common Pleas. *Id*. On December 9, 2015, the Seneca County Grand Jury indicted Wade on two counts: 1) Trafficking in Drugs in violation of R.C. 2925.03(A)(2),(C)(2)(a), a felony of the fifth degree and 2) Possession of Counterfeit Controlled Substances in violation of R.C. 2925.37(A),(G), a misdemeanor of the first degree. Doc. 5. Count One was based upon his transporting Alprazolam and included a specification requesting forfeiture of the cash and cell phones as being used in the commission of the offense. *Id.*

Count Two alleged that Wade possessed counterfeit Oxycodone. *Id.* Wade was arraigned on December 23, 2015, and entered pleas of not guilty to the charges in the indictment. Counsel for Wade filed a motion to suppress claiming that the stop was not justified, the detention was beyond the scope of the traffic stop, and the warrantless search of the vehicle and Wade was not supported by probable cause. Doc. 2. A second motion to suppress was filed on January 7, 2016. Doc. 20. This motion alleged the same issues, but provided additional arguments. The State filed its opposition to the motion to suppress on February 16, 2016. Doc. 23. Two hearings were held on the motions: one on February 18, 2016, and the other on March 24, 2016. On May 17, 2016, the trial court denied the motions to suppress. Doc. 28.

{¶7} On August 9, 2016, Wade changed his plea to one of no contest to the charges in the indictment, and he was found guilty by the trial court. Doc. 32 and 33. A sentencing hearing was held on September 29, 2016. Doc. 37. The trial court imposed a prison term of 10 months on Count One and a jail term of 100 days for Count Two, with the jail term to be served concurrent with the prison term. *Id.* Wade filed a timely notice of appeal. Doc. 39. On appeal, Wade raises the following assignments of error.

**First Assignment of Error**

**The trial court erred in denying the defense motion for suppression of the fruits of an unwarranted and unreasonable stop of the vehicle in which [Wade] was a passenger.**

**Second Assignment of Error**

**The trial court erred in not suppressing the fruits of an unreasonable extension of the traffic stop to engage in a drug investigation without probable cause.**

**Third Assignment of Error**

**The trial court erred by not suppressing the fruits of the search of the vehicle in which [Wade] was a passenger because the canine did not provide sufficient additional indicia to enable a conclusion of probable cause.**

{¶8} All of the assignment of errors arise from the denial of the motion to suppress. "An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact." *State v. Fittro*, 3d Dist. Marion No. 9-14-19, 2015-Ohio-1884, ¶ 11.

> **When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.**

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

*Reasonableness of the Stop*

{¶9} In the first assignment of error, Wade claims that the traffic stop was unreasonable. "When we review the constitutionality of a traffic stop, we 'must

view the stop in light of the totality of the surrounding circumstances' and determine whether "specific, articulable facts" in support of the reasonable suspicion existed. *State v. Urdiales*, 3d Dist. Henry No. 7-15-03, 2015-Ohio-3632, 38 N.E.3d 907, ¶ 24 quoting *State v. Dicke*, 3d Dist. Auglaize No. 2-07-29, 2007-Ohio-6705, ¶ 13. If an officer's decision to stop a motorist for a traffic violation is based upon a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 8. According to the testimony of Elliott, he stopped the vehicle for improper use of its turn signal and for having the windows too heavily tinted. February 18, 2016, Tr. 14. Ohio law requires that a turn signal be given continuously for at least one hundred feet before turning. R.C. 4511.39(A). The question of whether the facts in this action provides probable cause for the stop was addressed by the Second District Court of Appeals in *State v. Wooster*, 2d Dist. Montgomery No. 24855, 2012-Ohio-4439. In *Wooster*, the driver of the vehicle approached an intersection with the left signal activated. *Id*. at ¶ 8. The driver, at the last second, turned off the left signal, activated the right signal, and then turned right. *Id*. The appellate court determined that "a driver does not satisfy [the requirements of R.C. 4511.39(A)] by signaling an intention to turn left for nearly all of the required one-hundred-foot distance before then making a right-hand turn." *Id*. at ¶ 9. Since the officer had observed a traffic violation, the appellate court held that he had a lawful basis for the stop. *Id*. at ¶ 10.

-7-

{¶10} Similarly, Elliott indicated in this case that he observed Hoose turn on her left turn signal, reach the intersection, stop, turn off the left turn signal, activate the right turn signal, and then proceed to turn right. These facts are nearly identical to those in *Wooster*. We agree with the Second District Court of Appeals, at least in part, and hold that these actions provide a basis for a lawful stop.

{¶11} Additionally, Elliott testified that he also stopped the vehicle due to the excessive tint of the windows. February 18, 2016, Tr. 14. Elliott indicated that the tint was so dark that he could not see inside the vehicle. *Id.* "A police officer who, based upon his observations and experience, has a reasonable, articulable suspicion that the windows on a motor vehicle are excessively tinted, may stop the vehicle for purposes of issuing a citation for excessive window tinting." *State v. Mackey*, 2d Dist. Montgomery No. 22244, 2008-Ohio-3621, ¶ 11. Since the evidence presented at the hearing indicated that the officer had reasonable and articulable suspicion of criminal wrongdoing in that he, based upon his observations and experience, believed the driver was in violation of two Ohio laws, the stop was constitutionally valid. The first assignment of error is thus overruled.

*Duration of the Stop*

{¶12} In the second assignment of error, Wade claims that the stop was delayed for the purpose of allowing the canine to circle the vehicle. The U.S. Supreme Court has recently addressed the duration of a traffic stop when a "dog

sniff" is being conducted. *Rodriguez v. United States*, 575 U.S. ___, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015). The Court held as follows:

> **Absent reasonable suspicion, police extension of a traffic stop in order to conduct a dog sniff violates the Constitution's shield against unreasonable seizures.**
>
> **A traffic stop is more like a brief stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, than an arrest, see, *e.g., Arizona v. Johnson*, 555 U.S. 323, 330, 129 S.Ct. 781, 172 L.Ed.2d 694. Its tolerable duration is determined by the seizure's "mission," which is to address the traffic violation that warranted the stop, *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 and attend to related safety concerns. Authority for the seizure ends when tasks tied to the traffic infraction are – or reasonably should have been – completed. The Fourth Amendment may tolerate certain unrelated investigations that do not lengthen the roadside detention, *Johnson*, 555 U.S. at 327-328, 129 S.Ct. 781 (questioning); *Caballes*, 543 U.S., at 406, 408, 125 S.Ct. 834 (dog sniff), but a traffic stop "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a warning ticket, *id*, at 407, 125 S.Ct. 834.**
>
> **Beyond determining whether to issue a traffic ticket, an officer's mission during a traffic stop typically includes checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. See *Delaware v. Prouse,* 440 U.S. 648, 658-659, 99 S.Ct. 1391, 59 L.Ed.2d 660. Lacking the same connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission.**

*State v. Rodriguez*, 575 U.S. ___, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015) at syllabus.

{¶13} In this case, Bell and Ricky arrived on the scene within one minute of the initial stop and while Elliott was still gathering basic information from Hoose and Wade to relay to dispatch as part of the initial traffic stop. February 18, 2016 Tr. 19, 51. The free air sniff of the exterior of the car was conducted while Elliott was awaiting the results of his inquiries to dispatch. *Id*. at 20, 51. Ricky had only spent 30 seconds walking around the vehicle before he alerted to the presence of narcotics. March 24, 2016 Tr. 29. This occurred before the response from dispatch was received. *Id*. at 20. From the time of the initial stop until Wade and Hoose were removed from the vehicle for officer safety, three to five minutes had passed. *Id*. at 51. Based upon the testimony before it, the trial court concluded that the stop was not extended by the free air sniff conducted by Ricky. Doc. 28 at 3. We agree with the trial court that there was no extension of the stop by allowing Ricky to walk around the car. The testimony showed that this was done simultaneously with the completion of the traffic mission. Thus, the second assignment of error is overruled.

*Basis for Additional Search*

{¶14} In the third assignment of error, Wade claims that the trial court should have suppressed the results of the search because the alert of Ricky alone was insufficient to provide probable cause for a search of the individuals. "The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."

*Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Generally, a warrantless search is considered per se unreasonable unless certain "specifically established and well delineated exceptions" exist. *Urdiales*, *supra* at ¶ 28 quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 454-55, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of these exceptions is a pat down search for the purpose of officer safety. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**{¶15}** In this case, Elliott testified that he had information that drugs were being sold at 307 South Wood Street by a black male known as "Tone". Feb. 18, 2016 Tr. 12, 30. He also knew that the drugs were coming into Seneca County from Wyandot County. *Id.* at 32. On October 23, 2015, Elliott saw the vehicle he later stopped parked in front of the Wood Street house and a black male walking away from it. *Id*. at 11-14. This drew his attention and he noted that the car windows were so heavily tinted that he could not see who was inside the vehicle. *Id*. at 14. He also knew that the vehicle was from Wyandot County. *Id.* at 58. Elliott then started to follow the vehicle and observed the traffic violation. *Id*. at 14. Suspecting that there might have been drug activity, Elliott proceeded with the stop and call for a K-9 unit. *Id*. at 15. Elliott testified that Wade was acting very nervous. *Id*. at 17-18. Then Ricky alerted on the car. At that time, Elliott and Bell had Wade and Hoose exit the vehicle and Elliott conducted a pat down search of Wade for the purpose of officer safety. *Id.* at 20. Elliott felt a wrapped package that made a

crunching sound. *Id*. at 21. Wade then gave Elliott permission to remove the item. *Id*. at 21. The retrieved item was the bag of pills. *Id*.

{¶16} Based upon the totality of the circumstances at that time, Elliott had probable cause to suspect that criminal activity was occurring and to continue to investigate. Contrary to the argument of Wade, the search was not based solely upon the alert of the Ricky, but upon all of the information available to the officer at the time. Once Elliott removed Wade from the vehicle, he was permitted to pat down Wade for weapons. During this search, Elliott felt the baggie. Wade then gave permission for Elliott to remove the baggie.[1] The evidence before the trial court does not indicate that either the continued investigation nor the warrantless search of Wade was improper in any way. The trial court did not err in denying the motion to suppress based upon the warrantless search. The third assignment of error is overruled.

{¶17} Having found no error prejudicial to the appellant in the particulars assigned or argued, the judgment of the Court of Common Pleas of Seneca County is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

**/hls**

---

[1] Although Wade denied at the March 24, 2016 hearing that he gave consent to the removal of the baggie, Elliott testified that he had consented. February 18, 2016 Tr. at 21 and March 24, 2016 Tr. at 53.