[Cite as *State v. Little*, 2020-Ohio-4097.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

MICHAEL L. LITTLE,

    DEFENDANT-APPELLANT.

CASE NO. 1-20-11

O P I N I O N

---

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2019 0310

Judgment Affirmed

Date of Decision:  August 17, 2020

---

APPEARANCES:

    *Linda Gabriele* for Appellant

    *Jana E. Emerick* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Michael L. Little ("Little") appeals the judgment of the Allen County Court of Common Pleas, alleging that the trial court erred by denying his motion to suppress. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Officer Christopher Lemke ("Officer Lemke") works for the Lima Police Department. Tr. 4. At roughly 1:00 A.M. on July 13, 2019, Officer Lemke was on patrol. Tr. 5. As he was driving westbound on State Street, Officer Lemke observed a white sport utility vehicle ("SUV") that was driven by Little make a right turn into the eastbound lane of State Street. Tr. 5, 8, 9. After the SUV completed this turn, it "stopped in the middle of the roadway." Tr. 5-6, 8. Officer Lemke testified that he was driving in the opposite direction as Little was and had to maneuver around Little's stopped SUV in order to drive past him. Tr. 6, 8-9.

{¶3} After he drove past the SUV, Officer Lemke turned his cruiser around in the next intersection. Tr. 5. However, as Officer Lemke was turning his cruiser around, the SUV "took off at a high rate of speed." Tr. 6. Officer Lemke began to follow after the SUV. Tr. 6. He then observed the SUV approach a stop sign. Tr. 6. Officer Lemke testified that he saw Little "slow[] down and hit the brakes" before the SUV "rolled right through the intersection." Tr. 6, 10. At this point, Officer Lemke activated the lights of his cruiser and initiated a traffic stop. Tr. 6, 8. In

response, Little eventually stopped his SUV, opened his door, and fled on foot away from his vehicle. Ex. 1. Tr. 6, 11. Officer Lemke then pursued Little on foot and apprehended him. Ex. 1. Tr. 11. Officer Lemke testified that he noticed signs of impairment as he walked Little towards the police cruiser. Tr. 12.

{¶4} On August 15, 2019, Little was indicted on one count of operating a vehicle under the influence of alcohol, a drug of abuse or a combination of them in violation of R.C. 4511.19(A)(1)(b), 4511.19(G)(1)(d) and one count of operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19(A)(1)(a), 4511.19(G)(1)(d). Doc. 5. On October 8, 2019, Little filed a motion to suppress, alleging that the stop of his vehicle was illegal. Doc. 26. On October 18, 2019, the trial court held a suppression hearing at which Officer Lemke testified. Tr. 1. The State also offered video footage from Officer Lemke's body camera and his cruiser's dashboard camera as evidence. Ex. 1. On October 24, 2019, the trial court denied Little's motion to suppress. Doc. 34.

{¶5} On January 8, 2020, Little entered a plea of no contest to the first count in the indictment. Doc. 46. The second count with which Little had been charged was then dismissed. Doc. 46. The trial court found Little guilty of the offense operating under the influence of alcohol, a drug of abuse, or a combination of them in violation of R.C. 4511.19(A)(1)(b). Doc. 47. The trial court sentenced Little on February 20, 2020. Doc. 51.

*Assignment of Error*

**{¶6}** The appellant filed his notice of appeal on February 28, 2020.  Doc. 53.

On appeal, Little raises the following assignment of error:

> **The trial court erred in overruling the Defendant-Appellant's motion to suppress as law enforcement lacked reasonable suspicion to stop the Defendant-Appellant.**

Little argues that the trial court's decision to deny his motion to suppress was not supported by competent, credible evidence.

*Legal Standard*

**{¶7}** The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *."  Fourth Amendment, United States Constitution.  The Ohio Constitution offers a parallel provision to the Fourth Amendment of the Federal Constitution that has been generally held to afford the same level of protection as the United States Constitution.  *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11, citing *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997).  "[A] police stop of a motor vehicle and the resulting detention of its occupants has been held to be a seizure under the Fourth Amendment."  *State v. Kerr*, 3d Dist. Allen No. 1-17-01, 2017-Ohio-8516, ¶ 13, citing *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)

**{¶8}** "In order to initiate a constitutionally permissible traffic stop, law enforcement must, at a minimum, have a reasonable, articulable suspicion to believe

that a crime has been committed or is being committed." *State v. Smith*, 2018-Ohio-1444, 110 N.E.3d 944, ¶ 8 (3d Dist.), citing *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991).

> **"The Supreme Court of Ohio has defined 'reasonable articulable suspicion' as 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement].'" *State v. Shaffer*, 2013-Ohio-3581, 4 N.E.3d 400, ¶ 18 (3d Dist.), quoting *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988), quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *Kerr, supra*, at ¶ 15, quoting *State v. Jones*, 70 Ohio App.3d 554, 556-557, 591 N.E.2d 810 (2d Dist. 1990).**

(Bracketed Insertion Sic.) *Smith* at ¶ 9. "Furthermore, these circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Andrews, supra*, at 88-89. "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *Id*. at 88.

{¶9} "A police officer may initiate a traffic stop after witnessing a traffic violation." *Smith* at ¶ 10, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091, 1097 (1996). R.C. 4511.43(A) reads, in its relevant part, as follows:

> **Except when directed to proceed by a law enforcement officer, every driver of a vehicle * * * approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the**

> **crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it.**

R.C. 4511.43(A). *See* Lima Codified Ordinance 432.18(a). A driver's failure to comply with a stop sign is a traffic violation that provides a police officer with probable cause to initiate a traffic stop. *See State v. Miller*, 3d Dist. Marion No. 9-14-50, 2015-Ohio-3529, ¶ 13; *Akron v. Buchwald*, 9th Dist. Summit No. 21433, 2003-Ohio-5044, ¶ 15; *State v. Mihely*, 11th Dist. Ashtabula Nos. 2001-A-0083, 2001-A-0084, 2002-Ohio-6939, ¶ 11.

{¶10} "To deter Fourth Amendment violations, the Supreme Court of the United States has adopted an exclusionary rule under which 'any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant.'" *Kerr, supra*, at ¶ 17, quoting *State v. Steinbrunner*, 3d Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12. Thus, the appropriate remedy for a Fourth Amendment violation is generally the suppression of any illegally obtained evidence. *State v. O'Neal*, 3d Dist. Allen No. 1-07-33, 2008-Ohio-512, ¶ 19.

{¶11} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

> **At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. [*Burnside* at ¶ 8]. *See also State v. Carter*, 72 Ohio St.3d 545, 552[, 651 N.E.2d 965] (1995). When**

> **reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence.** *Burnside* **at ¶ 8, citing** *State v. Fanning*, **1 Ohio St.3d 19[, 437 N.E.2d 583] (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard.** *Id.*, **citing** *State v. McNamara*, **124 Ohio App.3d 706, 710[, 707 N.E.2d 539] (4th Dist. 1997).**

*State v. Sidney*, 3d Dist. Allen No. 1-19-32, 2019-Ohio-5169, ¶ 8.

*Legal Analysis*

{¶12} At the suppression hearing, Officer Lemke testified that he saw Little approach a stop sign in his SUV, "slow[] down and hit the brakes" before he "rolled right through the intersection." Tr. 6. Officer Lemke later affirmed that Little's SUV did not come to a complete stop before entering the intersection and stated that the SUV went through the intersection at "approximately five/ten miles an hour * * *." Tr. 17. The prosecution also introduced video footage from a camera on the police cruiser's dashboard. Ex. 1. The stop sign and Little's brake lights can be discerned on this video footage. Ex. 1. Doc. 34.

{¶13} However, whether Little stopped his SUV before he crossed into the intersection is unclear in this footage as the police cruiser was turning at roughly the same time that Little was approaching the stop sign. Ex. 1. When presented with this inconclusive video footage at the suppression hearing, Officer Lemke indicated that he, from his vantage point, could see that Little rolled through the stop sign without stopping. Tr. 10. He said, "I looked to the right and * * * s[aw] the vehicle

-7-

slowing down and so I kept eyes on the vehicle. As I turned right the vehicle let off the brake and continued through the intersection." Tr. 10.

{¶14} The dashboard camera was not in a position to capture Little's actions clearly as he approached the stop sign. Ex. 1. But this does not mean that Officer Lemke was not in a position to see Little's actions as he approached the stop sign. Thus, while this video footage does not confirm Officer Lemke's testimony, this video footage also does not contradict his testimony. The fact that the trial court relied on Officer Lemke's statements in the absence of video footage that confirmed his testimony does not mean that the trial court erred. *See State/City of Toledo v. Reese*, 2018-Ohio-2981, 112 N.E.3d 514, ¶ 23 (6th Dist.) (wherein the trial court relied an officer's testimony as to the pace of a vehicle even though the video footage did not capture the relevant speed readings).

{¶15} Officer Lemke's testimony provided the trial court with some competent, credible evidence from which it could determine that Little failed to comply with a stop sign. Since the trial court's decision was based on some competent, credible evidence, this Court will not disturb the trial court's factual findings and will turn to examining the trial court's legal conclusion in this matter. After finding that Officer Lemke's testimony was "credible," the trial court determined that he "had an objectively reasonable justification for making the stop" because he observed Little fail to stop his SUV at the stop sign. Doc. 47.

{¶16} The failure to comply with a stop sign is a violation of R.C. 4511.43(A) and/or Lima Codified Ordinance 432.18(a). *See* R.C. 4511.43(A); Lima Codified Ordinance 432.18(a). Since Officer Lemke witnessed Little commit a traffic violation, Officer Lemke had more than the reasonable, articulable suspicion that was required to initiate a traffic stop of Little's SUV. This traffic violation, by itself, can serve as a sufficient legal basis for the traffic stop in this case. *State v. Pratt*, 4th Dist. Pickaway No. 99CA53, 2000 WL 1281217, *2-3 (Sept. 5, 2000); *State v. Akers*, 2016-Ohio-7216, 72 N.E.3d 135 (7th Dist.). After reviewing the trial court's decision, we do not find any error in the trial court's application of the law to these facts.

{¶17} On appeal, Little also argues that he did not impede traffic in violation of R.C. 4511.22(A) and/or Lima Codified Ordinance 434.06(a) by stopping on the roadway. Little asserted that he stopped to allow the police cruiser to have the necessary space to pass through that stretch of roadway. Tr. 19. At the suppression hearing, Officer Lemke had testified that he believed that Little had impeded traffic by stopping in the roadway. We note that the trial court never found that Little committed the violation of impeding traffic. Doc. 34.

{¶18} However, we ultimately do not need to address the issue of whether Little stopping in the roadway provided Officer Lemke with a reasonable, articulable suspicion to initiate a traffic stop because Officer Lemke later witnessed Little fail to comply with a stop sign. As we have already noted, Little's failure to

comply with a stop sign provided Officer Lemke with a sufficient legal justification to initiate a traffic stop.  Thus, whether Officer Lemke had a reasonable, articulable suspicion that could have served as grounds to stop Little's vehicle earlier is irrelevant in this case.

{¶19} In the end, Officer Lemke's testimony provided some competent, credible evidence from which the trial court could conclude that Little had committed the traffic violation of failing to comply with a stop sign and could conclude that Officer Lemke had a legal justification to conduct a traffic stop.  After reviewing the evidence produced at the suppression hearing, we conclude that the trial court did not err in denying Little's motion to suppress.  Thus, Little's sole assignment of error is overruled.

*Conclusion*

{¶20} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Allen County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**SHAW P.J. and ZIMMERMAN J., concur.**

**/hls**