**[Cite as *State v. Harpel*, 2020-Ohio-4513.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,

      v.

JIMMY LEE HARPEL,

      DEFENDANT-APPELLANT.

CASE NO. 6-20-03

O P I N I O N

---

**Appeal from Hardin County Common Pleas Court**
**Trial Court No. 20192106 CRI**

**Judgment Affirmed**

**Date of Decision:  September 21, 2020**

---

**APPEARANCES:**

    *Emily P. Beckley* **for Appellant**

    *Jason M. Miller* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Jimmy Lee Harpel ("Harpel") appeals the judgment of the Hardin County Court of Common Pleas, alleging (1) that the trial court erred in denying his motion to suppress; (2) that his conviction is not supported by sufficient evidence; and (3) that the trial court erred in sentencing him. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On March 16, 2019, Ohio State Highway Patrol Trooper Damian Roose ("Trooper Roose") was working third shift. Suppression Hearing Tr. 14. At 12:45 A.M., he observed a vehicle driven by Harpel appear to be travelling faster than the posted twenty-five mile per hour speed limit. *Id*. at 16. Based on his training and experience, Trooper Roose testified that he believed that Harpel was driving roughly forty miles per hour. *Id*. at 18. Trooper Roose then began to follow Harpel's vehicle and witnessed Harpel approach an intersection that had a stop sign. *Id*. at 19.

{¶3} Trooper Roose testified that Harpel slowed down his vehicle before the stop sign but failed to come to a complete stop before entering into the intersection. Suppression Hearing Tr. 20-21. Trooper Roose then pursued Harpel's vehicle to another intersection where Harpel turned right but failed to activate his turn signal at an appropriate distance from the intersection. *Id*. at 19. He testified that Harpel activated his turn signal "at the intersection but not before." *Id*. at 19, 21.

{¶4} Trooper Roose activated the lights on his cruiser to initiate a traffic stop. Suppression Hearing Tr. 23. However, Harpel continued driving, passing through roughly three more intersections before stopping his vehicle. *Id*. at 25. Trooper Roose stated that two of these intersections had stop signs that Harpel "rolled through" without stopping. *Id*. at 26. Since Harpel was not stopping, Trooper Roose activated his siren as he followed Harpel. *Id*. at 25. At this point, Harpel began to pull his vehicle over to the side of the road. Before he came to a stop, Harpel's "front right tire actually drove on the curb and back off." *Id*. at 26.

{¶5} Trooper Roose then exited his police cruiser, approached Harpel's vehicle, and made contact with Harpel. Suppression Hearing Tr. 29. Trooper Roose testified that he detected the odor of an alcoholic beverage and noticed that Harpel's eyes were bloodshot and glassy. Trial Tr. 63, 71. Trooper Roose then directed Harpel to take a seat in the police cruiser where he (Trooper Roose) administered a Horizontal Gaze Nystagmus Test ("HGN Test") on Harpel. *Id*. at 73. After observing six out of six of the HGN Test clues in Harpel's eyes, Trooper Roose asked Harpel to recite the alphabet and to count backwards from seventy-six to sixty-four. *Id*. at 82, 86, 87.

{¶6} Based on Harpel's performance in these tests, Trooper Roose placed Harpel under arrest for operating a vehicle while impaired and took him to the Kenton Police Department. Trial Tr. 90, 107. Trooper Roose testified that he read the contents of Bureau of Motor Vehicles Form 2255 ("BMV Form 2255") to Harpel

and explained the consequences of refusing to take a breath test. *Id*. at 107, 109. Trooper Roose testified that Harpel verbally refused to submit to a breath test. *Id*. at 109.

{¶7} On July 17, 2019, Harpel was indicted on one count of operating a vehicle while under the influence of alcohol, drugs, or a combination of them in violation of R.C. 4511.19(A)(1)(a), (G)(1)(d) and one count of operating a vehicle while under the influence of alcohol, drugs, or a combination of them in violation of R.C. 4511.19(A)(2), (G)(1)(d). Doc. 1.[1] Both of these offenses were charged as fourth degree felonies. Doc. 1. On September 18, 2019, Harpel filed a motion to suppress that argued that Trooper Roose did not have a reasonable, articulable suspicion to conduct a traffic stop.[2] Doc. 16. The suppression hearing occurred on October 30, 2019. Doc. 23. The State called Trooper Roose to testify at this hearing. Suppression Hearing Tr. 10. On October 31, 2019, the trial court denied Harpel's motion to suppress. Doc. 23.

---

[1] The first count alleged that Harpel "had previously been convicted of * * * three or four violations of [R.C. 4511.19(A) or (B)] * * * or [within] twenty years of the offense, has previously been convicted of * * * five or more violations of that nature * * *." Doc. 1. However, the second count did not contain this language. Doc. 1. Subsequently, the trial court issued a journal entry that amended the indictment so that the second count alleged that Harpel had "three or four violations of 4511.19(A)(1), (A)(2) or (B) within 10 years of the offense or five or more violations of that nature within 20 years of the offense." Doc. 30. This amendment was made "pursuant to discussions with the defendant's attorney." Doc. 30. Further, this amendment was agreed to by the parties and was signed by the prosecutor, the defense counsel, and the trial judge. Doc. 30.

[2] This was a motion for leave to file his motion to suppress instanter as it was filed one day after the relevant deadline. Doc. 16. The trial court granted Harpel leave to file a motion to suppress instanter on September 18, 2019. Doc. 17.

{¶8} On November 19, 2019, the jury trial on the charges against Harpel began. Trial Tr. 1. At trial, the Defense stipulated to the fact that Harpel had three prior convictions for violating R.C. 4511.19(A) in the ten years preceding his alleged violation of R.C. 4511.19(A)(2) on March 16, 2019. Trial Tr. 114-115. At the close of the State's case, the Defense made a Crim.R. 29 motion that the trial court denied. *Id.* at 187-189. After the conclusion of the trial, the jury found Harpel guilty of both of the charges against him. Doc. 31, 32. The jury further found that Harpel had been previously convicted of three or four violations of R.C. 4511.19(A) or (B) in the ten years preceding March 16, 2019. Doc. 31, 32. This finding was made for both of the charges against Harpel. Doc. 31, 32.

{¶9} On January 8, 2020, Harpel appeared before the trial court for sentencing. Doc. 39. After the trial court determined that the two counts against Harpel were allied offenses of similar import, the State elected to proceed on the second count that charged Harpel with a violation of R.C. 4511.19(A)(2). Doc. 39. The trial court imposed a stated prison term of twenty-four months with the first one hundred twenty days of this stated term being mandatory. Doc. 39.

{¶10} The appellant filed his notice of appeal on January 31, 2020. Doc. 44. On appeal, Harpel raises the following assignments of error:

**First Assignment of Error**

**The trial court erred in denying Appellant's motion to suppress.**

**Second Assignment of Error**

**Appellant's conviction was not supported by sufficient evidence.**

**Third Assignment of Error**

**The trial court erred in sentencing Appellant to a prison term.**

*First Assignment of Error*

{¶11} Harpel argues that the police did not have a legal justification to conduct a traffic stop of his vehicle and that the trial court should have granted his motion to suppress on these grounds.

Legal Standard

{¶12} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." Fourth Amendment, United States Constitution. The Ohio Constitution offers a parallel provision to the Fourth Amendment of the Federal Constitution that has been generally held to afford the same level of protection. *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 11, citing *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997). "[A] police stop of a motor vehicle and the resulting detention of its occupants has been held to be a seizure under the Fourth Amendment." *State v. Kerr*, 3d Dist. Allen No. 1-17-01, 2017-Ohio-8516, ¶ 13, citing *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)

**{¶13}** "In order to initiate a constitutionally permissible traffic stop, law enforcement must, at a minimum, have a reasonable, articulable suspicion to believe that a crime has been committed or is being committed." *State v. Smith*, 2018-Ohio-1444, 110 N.E.3d 944, ¶ 8 (3d Dist.), citing *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991).

> **"The Supreme Court of Ohio has defined 'reasonable articulable suspicion' as 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement].'"** *State v. Shaffer*, **2013-Ohio-3581, 4 N.E.3d 400, ¶ 18 (3d Dist.), quoting** *State v. Bobo*, **37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988), quoting** *Terry v. Ohio*, **392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause."** *Kerr, supra*, **at ¶ 15, quoting** *State v. Jones*, **70 Ohio App.3d 554, 556-557, 591 N.E.2d 810 (2d Dist. 1990).**

(Bracketed Text Sic.) *Smith* at ¶ 9.

**{¶14}** "Furthermore, these circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Andrews, supra*, at 88-89. "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *Id*. at 88. "A police officer may initiate a traffic stop after witnessing a traffic violation." *Smith* at ¶ 10, citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091, 1097 (1996).

{¶15} "To deter Fourth Amendment violations, the Supreme Court of the United States has adopted an exclusionary rule under which 'any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant.'" *Kerr, supra*, at ¶ 17, quoting *State v. Steinbrunner*, 3d Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12. Thus, the appropriate remedy for a Fourth Amendment violation is generally the suppression of any illegally obtained evidence. *State v. O'Neal*, 3d Dist. Allen No. 1-07-33, 2008-Ohio-512, ¶ 19.

{¶16} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

> **At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. [*Burnside* at ¶ 8]. *See also State v. Carter*, 72 Ohio St.3d 545, 552[, 651 N.E.2d 965] (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19[, 437 N.E.2d 583] (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706, 710[, 707 N.E.2d 539] (4th Dist. 1997).**

*State v. Sidney*, 3d Dist. Allen No. 1-19-32, 2019-Ohio-5169, ¶ 8.

### Legal Analysis

{¶17} In his testimony at the suppression hearing, Trooper Roose stated that he observed Harpel commit at least two different traffic violations before he

(Trooper Roose) activated his lights to initiate a traffic stop. *See Smith, supra*, at ¶ 10. First, Trooper Roose testified that Harpel failed to come to a complete stop at a stop sign before entering an intersection. Suppression Hearing Tr. 20. He stated that he observed Harpel "slowed down for [the stop sign] but did not come to a complete stop." *Id.* at 21.

{¶18} "A driver's failure to comply with a stop sign is a * * * violation [of R.C. 4511.43(A)] that provides a police officer with probable cause to initiate a traffic stop." *State v. Little*, 3d Dist. Allen No. 1-20-11, 2020-Ohio-4097, ¶ 16, citing *State v. Miller*, 3d Dist. Marion No. 9-14-50, 2015-Ohio-3529, ¶ 13; *Akron v. Buchwald*, 9th Dist. Summit No. 21433, 2003-Ohio-5044, ¶ 15; *State v. Mihely*, 11th Dist. Ashtabula Nos. 2001-A-0083, 2001-A-0084, 2002-Ohio-6939, ¶ 11. Thus, this traffic violation could, "by itself, * * * serve as a sufficient legal basis for [a] traffic stop * * *." *Little* at ¶ 16.

{¶19} Second, Trooper Roose also testified that Harpel turned at an intersection after failing to activate his turn signal at the proper distance from the intersection. Suppression Hearing Tr. 22. He stated that Harpel "activated [his turn signal] at the intersection but not prior." *Id.* He further affirmed that Harpel did not activate his turn signal one hundred feet before reaching the intersection where he turned as is required by Ohio law. *Id.* at 23. On cross-examination, Trooper Roose again testified about his observations regarding Harpel's turn signal as he (Trooper

Roose) referenced a video recording from his cruiser's dashboard camera that was being played for the trial court. *Id.* at 42-46. Ex. D.

**{¶20}** R.C. 4511.39(A) "requires that a turn signal be given continuously for at least one hundred feet before turning." *State v. Wade*, 3d Dist. Seneca No. 13-16-23, 2017-Ohio-1319, ¶ 9, citing R.C. 4511.39(A). Thus, even though Harpel activated his turn signal just before he turned right at an intersection, he still failed to comply with R.C. 4511.39(A). *Id.*, citing *State v. Wooster*, 2d Dist. Montgomery No. 24855, 2012-Ohio-4439, ¶ 8-9. His failure to comply with R.C. 4511.39(A) was a traffic violation that provided Trooper Roose with a legal justification to initiate a traffic stop. *Wade* at ¶ 10.

**{¶21}** After reviewing the evidence presented at the suppression hearing, we conclude that the trial court did not err in denying Harpel's motion to suppress. Trooper Roose's testimony and the footage from the dashboard camera provided some competent, credible evidence from which the trial court could conclude that there was a legal justification for the traffic stop of Harpel's vehicle. Thus, Harpel's first assignment of error is overruled.

*Second Assignment of Error*

**{¶22}** Harpel argues that the State did not prove, beyond a reasonable doubt, that he was impaired. For this reason, he asserts that his conviction is not supported by sufficient evidence.

Legal Standard

**{¶23}** A challenge to the sufficiency of the evidence supporting a conviction "is a question of law and a 'test of adequacy rather than credibility or weight of the evidence.'" *State v. Beaver*, 3d Dist. Marion No. 9-17-37, 2018-Ohio-2438, ¶ 40, quoting *State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19. "The sufficiency-of-the-evidence analysis addresses the question of whether adequate evidence was produced for the case to be considered by the trier of fact and, thus, whether the evidence was 'legally sufficient to support the verdict * * *.'" *State v. Luebrecht*, 3d Dist. Putnam No. 12-18-02, 2019-Ohio-1573, ¶ 36, quoting *State v. Worthington*, 3d Dist. Hardin No. 6-15-04, 2016-Ohio-530, ¶ 12. On appeal, the applicable standard

> **is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.**

*State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 8, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.).

Legal Analysis

**{¶24}** In this case, Harpel challenges his conviction for operating a vehicle while under the influence of alcohol, drugs, or a combination of them in violation of R.C. 4511.19(A)(2), (G)(1)(d). Doc. 39. In order to prove that Harpel committed this offense, the State had to establish that he [1] operated a vehicle under the

influence of alcohol, a drug of abuse or a combination of them; [2] refused to submit to a chemical test after having been arrested, having been asked by a law enforcement officer to submit to such test, and having been advised of consequences of refusal; and [3] had previously received a conviction for a violation of R.C. 4511.19(A)(1) or (B) within twenty years of the instant, alleged violation of R.C. 4511.19(A)(2). R.C. 4511.19(A)(2).

{¶25} At trial, the State called Trooper Roose as a witness. Trial Tr. 50. He testified that, while he was on patrol, his attention was drawn to Harpel's vehicle because he "visually estimated [Harpel's] vehicle to be travelling over the posted speed limit of 25 miles per hour." *Id*. at 55. He believed that Harpel was driving at a pace of roughly forty miles per hour where the speed limit was twenty-five miles per hour. *Id*. at 56. He also testified that he observed Harpel fail to activate his turn signal in accordance with the law. *Id*. at 58.

{¶26} Trooper Roose stated that he then activated his lights to initiate a traffic stop of Harpel's vehicle. *Id*. at 59. He then testified that Harpel continued driving through three more intersections. *Id*. at 60. He also stated that two of these intersections had stop signs and that Harpel passed by these stop signs without bringing his vehicle to a complete stop. *Id*. at 60. Trooper Roose testified that he then activated his siren because Harpel was not stopping his vehicle even though there were "multiple places" that he could have pulled over. *Id*. at 61-62. A video recording from the dashboard camera in Trooper Roose's cruiser was introduced

into evidence. *Id*. at 92, 186. Ex. 2. This footage confirmed that Harpel failed to signal properly before turning. Ex. 2. Harpel can also be seen driving through three intersections after Trooper Roose had activated his overhead lights. Ex. 2.

{¶27} Trooper Roose stated that, when he approached Harpel's stopped vehicle, he observed that Harpel's "eyes were bloodshot and glassy." Trial Tr. 63. He also smelled the odor of an alcoholic beverage and noted that Harpel exhibited poor finger dexterity as he reached for his license and registration. *Id*. at 65-66. Trooper Roose then asked Harpel to go into the police cruiser. *Id*. at 71. Trooper Roose testified that, after Harpel sat in the police cruiser, the vehicle had the "odor of an alcoholic beverage." *Id*. During the course of the traffic stop, Harpel consistently denied having any alcoholic beverages. *Id*. at 72.

{¶28} Trooper Roose then began to administer an HGN Test on Harpel. Trial Tr. 73. He testified that, in the process of conducting the HGN Test, he observed six of the six clues present in Harpel's eyes. *Id*. at 82. Harpel then refused to perform "the walk-and-turn and the one-leg stand" field sobriety tests. *Id*. at 83. However, Harpel did agree to recite the alphabet but "stopped at S" and "stumbled with letters." *Id*. at 86. Trooper Roose testified that Harpel's speech was slurred as he spoke. *Id*.

{¶29} Trooper Roose then asked Harpel to count backwards from seventy-six and to stop at sixty-four. *Id*. at 87. Harpel counted very slowly and counted backwards until Trooper Roose stopped him at forty-six. *Id*. at 88. Harpel, when

asked, could not recall that he was supposed to have stopped counting at sixty-four. *Id.* Trooper Roose testified that he "believed [Harpel] was under the influence of alcohol and over the legal limit." *Id.* at 89. Trooper Roose then placed Harpel under arrest for operating a vehicle while impaired. *Id.* at 90. A video recording of Harpel performing these tests was introduced into evidence and confirmed these aspects of Trooper Roose's testimony. *Id.* at 97, 186. Ex. 2.

{¶30} Trooper Roose testified that he drove Harpel to the Kenton Police Department. Trial Tr. 107. At the police station, Trooper Roose brought Harpel into the room where breath tests are administered and read him the contents of BMV Form 2255. *Id.* Ex. 3. Trooper Roose testified that he explained the consequences of refusing to take a breath test. Trial Tr. at 109. Trooper Roose then testified that he asked Harpel to take a breath test and that Harpel verbally refused to take the breath test. *Id.* at 109. Trooper Roose stated that Harpel checked the box on BMV Form 2255 that indicated he refused to take the breath test. *Id.* at 110. The State then introduced this BMV Form 2255 into evidence. *Id.* at 107, 110, 186. Ex. 3.

{¶31} At trial, the Defense stipulated to the fact that Harpel had three prior convictions for violating R.C. 4511.19(A) in the ten years preceding his alleged violation of R.C. 4511.19(A)(2) on March 16, 2019. Trial Tr. 114-115. A joint exhibit containing certified copies of these prior convictions was admitted by the trial court. *Id.* at 155. Ex. I. These convictions were for violations of R.C. 4511.19(A) from 2014, 2016, and 2018. Ex. I. *See* R.C. 4511.19(A)(2), (G)(1)(d).

-14-

{¶32} At trial, the State presented some evidence to substantiate each of the essential elements of the crime with which Harpel had been charged. After reviewing the evidence in a light most favorable to the prosecution, we conclude that the State presented evidence from which a rational trier of fact could determine that Harpel committed the offense of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(2). Thus, Harpel's second assignment of error is overruled.

### Third Assignment of Error

{¶33} Harpel argues that the trial court failed to comply with R.C. 2941.1413 by ordering him to serve a prison term in this case.

### Legal Standard

{¶34} When a defendant is convicted of a fourth degree felony for violating R.C. 4511.19(A)(2) and has three or four convictions for violating R.C. 4511.19(A) or (B) in the ten years preceding the instant offense, R.C. 4511.19(G)(1)(d)(ii) allows the trial court, in its discretion, to impose (1) a mandatory term of local incarceration of one hundred and twenty days or (2) a mandatory prison term of one hundred and twenty days. R.C. 4511.19(G)(1)(d)(ii). If the trial court determines that a mandatory term of local incarceration is appropriate,

> **it may impose a jail term in addition to the one hundred twenty-day mandatory term, the cumulative total of the mandatory term and the jail term for the offense shall not exceed one year, and, except as provided in division (A)(1) of section 2929.13 of the Revised Code, no prison term is authorized for the offense.**

R.C. 4511.19(G)(1)(d)(ii). *See* R.C. 2929.13(G)(1). However, if the trial court instead determines that a mandatory prison term is appropriate,

> **it also may sentence the offender to a definite prison term that shall be not less than six months and not more than thirty months and the prison terms shall be imposed as described in division (G)(2) of section 2929.13 of the Revised Code.**

R.C. 4511.19(G)(1)(d)(ii). *See* R.C. 2929.13(G)(2).

{¶35} However, when a defendant is convicted of a fourth degree felony for violating R.C. 4511.19(A)(2), the trial court may impose "a mandatory prison term of one, two, three, four, or five years * * * *if* the offender also is convicted of or also pleads guilty to a specification of the type described in [R.C.] 2941.1413." (Emphasis added.) R.C. 4511.19(G)(1)(d)(ii). R.C. 2941.1413 reads, in its relevant part, as follows:

> **Imposition of a mandatory additional prison term of one, two, three, four, or five years upon an offender * * * is precluded unless the indictment * * * charging a felony violation of division (A) of section 4511.19 of the Revised Code specifies that the offender, within twenty years of the offense, previously has been convicted of or pleaded guilty to five or more equivalent offenses. The specification shall be stated at the end of the body of the indictment * * * and shall be stated in substantially the following form:**
>
> **'SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender, within twenty years of committing the offense, previously had been convicted of or pleaded guilty to five or more equivalent offenses).'**

R.C. 2941.1413(A).  *See* R.C. 2929.13(G)(2).  Thus,

> **if the offender is being sentenced for a fourth degree felony OVI offense and the court does not impose a mandatory term of local incarceration \* \* \*, the court shall impose upon the offender a mandatory prison term of one, two, three, four, or five years if the offender also is convicted of or also pleads guilty to a specification of the type described in section 2941.1413 of the Revised Code** *or shall impose upon the offender a mandatory prison term of sixty days or one hundred twenty days as specified in division (G)(1)(d) or (e) of section 4511.19 of the Revised Code if the offender has not been convicted of and has not pleaded guilty to a specification of that type.*

(Emphasis added.)  R.C. 2929.13(G)(2).

Legal Analysis

{¶36} On appeal, Harpel argues that the trial court erred by imposing a prison term in the absence of the specification set forth in R.C. 2941.1413(A) in the original indictment.  Doc. 1.  This R.C. 2941.1413(A) specification must be included in the charging instrument in order for the trial court to impose "a mandatory prison term of one, two, three, four, or five years \* \* \*."  R.C. 4511.19(G)(1)(d)(ii).  *See* R.C. 2941.1413(A).

{¶37} However, at trial, the State never alleged nor attempted to prove that Harpel had five or more prior convictions in the twenty years preceding the instant offense.  The Defense stipulated to the fact that Harpel had three prior convictions for violations of R.C. 4511.19(A) or (B) in the ten years preceding the instant offense.  Trial Tr. 114-115.  The jury also found that Harpel had three or four convictions for violations of R.C. 4511.19(A) or (B) in the ten years preceding the

instant offense.  Doc. 31, 32.  Thus, Harpel was not convicted of nor plead guilty to an R.C. 2941.1314(A) specification.

{¶38} Consequently, at sentencing, the trial court did not order Harpel to serve "a mandatory prison term of one, two, three, four, or five years * * *."  R.C. 4511.19(G)(1)(d)(ii).  Rather, the trial court imposed "a stated prison term of 24 months" of which only "the first 120 consecutive days" were mandatory.  Doc. 39.  Thus, while the trial court did impose a prison term, the trial court did not impose a mandatory prison term in between one and five years that would have required the specification in R.C. 2941.1413(A) to be recited in the charging instrument.  R.C. 2941.1413(A).  R.C. 4511.19(G)(1)(d)(ii).

{¶39} Since Harpel had three or four convictions for violations of R.C. 4511.19(A) or (B) in the ten years preceding the instant offense, the trial court could, in its discretion, impose a mandatory prison term of one hundred twenty days and a definite prison term in between six and thirty months.  R.C. 4511.19(G)(d)(1)(ii).  *See* Trial Tr. 114-115.  Thus, the trial court, in this case, imposed a sentence that was in accordance with R.C. 4511.19(G)(1)(d)(ii).  After reviewing the evidence in the record, we do not find any indication that the trial court erred by ordering Harpel to serve a prison term in this case.  For this reason, Harpel's third assignment of error is overruled.

*Conclusion*

**{¶40}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Hardin County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**SHAW, P.J. and PRESTON, J., concur.**

**/hls**