[Cite as *State v. Boayue*, 2020-Ohio-549.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 18AP-972 |
| v. | : | (C.P.C. No. 17CR-5018) |
| Irnatine W. Boayue, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on February 18, 2020

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellant. **Argued**: *Seth L. Gilbert.*

**On brief**: *Robert E. Cesner, Jr.*, for appellee. **Argued**: *Robert E. Cesner, Jr.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals the order of the Franklin County Court of Common Pleas granting defendant-appellee, Irnatine W. Boayue's, motion to suppress the evidence obtained when she appeared before an investigator for the Franklin County Prosecutor's Office on June 20, 2017, after having received a subpoena to provide a handwriting exemplar to the Franklin County Grand Jury.

{¶ 2} Boayue is a legal immigrant from Liberia who has lived in the United States since 1985 and in Columbus since 2003. She is a lawful permanent resident, has an Ohio driver's license, and has no past criminal record. In March 2017, Boayue was called by Bureau of Criminal Investigations ("BCI") Agent Jennifer Comisford, who wanted to discuss Boayue's Ohio voting history and her alleged signatures on a voter registration form dated August 12, 2011 and in a voter poll book dated November 6, 2012. Agent Comisford set up a meeting with Boayue, but a few days later Boayue called back and indicated she

No. 18AP-972

wanted to talk with an attorney before the meeting. Agent Comisford then began taping that telephone call, but nothing of substance was recorded.

{¶ 3} As a result of Boayue's desire to speak with an attorney, Agent Comisford did not interview her in person. Instead, BCI referred the investigation to the Franklin County Prosecutor's Office, who obtained a grand jury subpoena for Boayue, which directed her to appear on June 29, 2017 to the Franklin County Grand Jury Office to provide a handwriting exemplar. Prosecutor's Office Investigator Mike Scheerer intended to compare that exemplar with Boayue's alleged signatures on the registration form in the voter poll book. But instead of appearing on June 29, Boayue contacted Scheerer directly on June 20, 2017, and she voluntarily appeared at the Franklin County Prosecutor's Office that same day to provide an exemplar. Accordingly, Scheerer did not intend to interview Boayue at that time, only to obtain a handwriting exemplar. When Boayue arrived at the prosecutor's office, Scheerer "walked her into our meeting room up there and we sat down and I told her she could take a seat wherever she wanted." (Nov. 14, 2018 Tr. at 20.) He shut the door but did not lock it. Scheerer did not threaten to arrest Boayue and never indicated she could be arrested.

{¶ 4} At some point while she was there, Scheerer showed Boayue both the registration application and the voter poll book register. She then admitted she had checked the box indicating that she is a United States citizen, that "she made a mistake and she loves America and is working for the government and does a lot of community work with Black Americans teaching them about the history in America after the Civil War," and that "she got kind of carried away at a function at [her] church." (State's Ex. SH-E; Nov. 14, 2018 Tr. at 34.)

{¶ 5} Boayue was indicted on September 14, 2017 for one count of illegal voting, a fourth-degree felony under R.C. 3599.12. The indictment alleged that she had voted in the 2012 general election, despite the fact she was not a qualified elector under Ohio law because she was not a United States citizen. Boayue filed a motion to suppress her statements to Scheerer, the handwriting exemplars, and "any statements, admissions, or confessions obtained * * * at any other time from [Boayue] during the course of the investigation in this case," arguing in part that the statements obtained on June 20, 2017 were both involuntary and obtained in violation of *Miranda v. Arizona*, 384 U.S. 436

No. 18AP-972

(1966). (Mot. to Suppress at 1.) Following a hearing and the testimony of several witnesses, the trial court issued an oral ruling and granted the motion in part:

> The Court at this time with respect to the motion filed by the defense and the arguments of the Court heard find[s] that the Defendant in this case, in speaking with the initial agent, basically stated that she did not wish to talk to anyone pending speaking with an attorney. In other words, she wanted to have an attorney to represent her.
>
> After that, she received a subpoena from the Franklin County Prosecutor's Office, a grand jury subpoena, to appear, and the purpose of that subpoena was for her to complete a London Letter, and this was to be done in the jury room.
>
> * * *
>
> Upon her appearance at the prosecutor's office, which was the standby appearance place based upon her conversation with the prosecutor's office, according to the testimony, she made statements voluntarily concerning the potential charges against her.
>
> While that may have occurred, the Court has some concerns and doubts. If it had been in the jury room with a jury, grand jury, certainly I don't believe that would have occurred without her being advised of--after she had exercised her right to an attorney whether--I don't believe that would have occurred.
>
> Based upon that, the Court feels that the proper course in this matter is to restrict her appearance at the prosecutor's office to the purpose stated in the subpoena, and that purpose was for her to complete the London Letter. And the Court will not allow any testimony concerning anything else that transpired at the prosecutor's office.

(Dec. 10, 2018 Tr. at 2-4.)

{¶ 6} Based on this oral ruling, it seems the trial court had originally intended to suppress Boayue's statements to Scheerer, but not the handwriting exemplar or any statements she had made to BCI Agent Comisford in March 2017. But, the trial court's December 12, 2018 journalized order instead simply states that Boayue's motion to suppress "is hereby GRANTED," and the briefing in this court reveals that parties disagree about whether either Boayue's statements to Agent Comisford or the handwriting exemplar were in fact suppressed by the trial court. (Emphasis sic.)

No. 18AP-972

{¶ 7} Rather than seek clarification of the court's decision, the State filed this interlocutory appeal, pursuant to R.C. 2945.67(A) and Crim.R. 12(K), and specifically certified that "the trial court's ruling on the motion to suppress has rendered the State's proof with respect to the pending charges so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed." (Notice of Appeal at 1.) And on appeal, the State asserts a single assignment of error: "The trial court committed reversible error in granting the motion to suppress." Therefore, both because it seems likely that the State could have proceeded to prosecute Boayue if the handwriting exemplars had not been suppressed and because a trial court speaks solely through its entries, we conclude the court's entry suppressed Boayue's statements to Agent Comisford and her statements to Scheerer, as well as the exemplars, and our opinion will accordingly analyze the admissibility of all this evidence. *See, e.g.*, *In re P.S.*, 10th Dist. No. 07AP-516, 2007-Ohio-6644, ¶ 12.

{¶ 8} Under the Fifth Amendment to the United States Constitution, no person "shall be * * * compelled in any criminal case to be a witness against himself." To protect this right, a criminal suspect in a custodial interrogation must be informed of her constitutional rights to remain silent and to have defense counsel. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). A custodial interrogation is questioning initiated by law enforcement after a suspect has been formally arrested or had her freedom restrained in such a way that it is the equivalent of a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983). Courts must examine the totality of the circumstances to determine how a reasonable person would have understood the interrogation, *Stansbury v. California*, 511 U.S. 318, 323 (1994). And examine the totality of the circumstances surrounding the interrogation in making that judgment. *See State v. Biros*, 78 Ohio St.3d 426, 441 (1997).

{¶ 9} Even in a non-custodial situation, the Due Process Clause of the Fourteenth Amendment requires statements to law enforcement to be made voluntarily in order to be admissible. *See generally State v. Scholl*, 10th Dist. No. 12AP-309, 2012-Ohio-6233, ¶ 7-8, and *State v. Volpe*, 10th Dist. No. 06AP-1153, 2008-Ohio-1678, ¶ 12-13 (citing cases). "Using an involuntary statement against a defendant in a criminal trial is a denial of due process of law." *State v. Carse*, 10th Dist. No. 09AP-932, 2010-Ohio-4513, ¶ 23, citing *Mincey v. Arizona*, 437 U.S. 385, 398 (1978). The basic test for voluntariness is whether

the confession is the product of a rational intellect and a free will, and whether a defendant's statement is voluntary is determined from the totality of the circumstances. *Carse; Scholl* at ¶ 7, citing *State v. Douglas*, 10th Dist. No. 09AP-111, 2009-Ohio-6659, ¶ 26. Moreover, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* at 164. The question of whether a statement is voluntary is a question of law which we review de novo. *Volpe* at ¶ 13; *see also Mincey* at 398, citing *Davis v. North Carolina*, 384 U.S. 737, 741-42 (1966).

{¶ 10} Finally, this court set forth the analysis for appellate review of a ruling on a motion to suppress in *State v. J.W.*, 10th Dist. No. 12AP-345, 2013-Ohio-804, ¶ 25-29. In ruling on such a motion, the trial court assumes the role of the trier of fact. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). On review, we accept the trial court's factual findings if they are supported by competent, credible evidence. *State v. Stokes*, 10th Dist. No. 07AP-960, 2008-Ohio-5222, ¶ 7. But, as the Supreme Court of Ohio has observed, "[a]ppellate review of a ruling on a motion to suppress presents a mixed question of law and fact. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. But the appellate court must decide the legal questions independently, without deference to the trial court's decision." (Internal citations omitted.) *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 14.

{¶ 11} We will begin with the simplest question, the admissibility of the handwriting exemplar. The law in Ohio is clear that "[a] handwriting exemplar, used solely for identification purposes, is a mere identifying physical characteristic and, as such, is outside the scope of the Fifth Amendment privilege against self-incrimination. * * * [T]here is no requirement that *Miranda* warnings be given prior to the giving of such handwriting exemplar." *State v. Ostrowski*, 30 Ohio St.2d 34 (1972), paragraph one of the syllabus. *See also United States v. Euge*, 444 U.S. 707, 713 (1980) (observing that "handwriting is in the nature of physical evidence which can be compelled by a grand jury in the exercise of its subpoena power") and *Hansen v. Owens*, 619 P.2d 315, 319 (Utah 1980), fn. 2 (collecting numerous state and federal cases that hold handwriting samples are beyond the scope of

No. 18AP-972

the Fifth Amendment privilege), *overruled on other grounds by American Fork City v. Cosgrove*, 701 P.2d 1069, 1075 (1985). Accordingly, we have little difficulty in concluding that insofar as the trial court's ruling suppressed Boayue's handwriting samples, it is erroneous.

{¶ 12} Likewise, Boayue's telephone conversation with Agent Comisford does not violate her Fifth or Fourteenth Amendment rights and should not have been suppressed. First, "Ohio courts have generally held that a conversation by telephone does not constitute a custodial interrogation that would require a *Miranda* warning, because there is no restraint of freedom and the conversation can be terminated at any time by hanging up the phone." *See, e.g., In re D.B.*, 10th Dist. No. 17AP-83, 2018-Ohio-1247, ¶ 39 (collecting cases). Moreover, the conversation was totally voluntary—it was initiated by Boayue herself when she called Agent Comisford and ended as soon as Agent Comisford was able to confirm that Boayue intended to speak with an attorney before any face-to-face meeting. Crucially, Agent Comisford made no promises or threats to Boayue, put no pressure on her during the call, and there were no other indicia of coercive police activity by Agent Comisford that would indicate Boayue's participation was against her will. And, ultimately, Boayue does not even admit to any wrongdoing during the call—her only statement of any substance was that her identity had been stolen in the recent past and for that reason she wanted to speak with counsel before answering any questions. Because there is no basis for concluding that the call with Agent Comisford was improper, its contents should not have been suppressed.

{¶ 13} Finally, Boayue argues that her statements to Scheerer were correctly suppressed by the trial court because they were obtained pursuant to a grand jury subpoena without *Miranda* warnings. We disagree. While it is beyond doubt that the Fifth Amendment privilege against self-incrimination extends to grand jury proceedings, the United States Supreme Court has thus far not held that grand jury witnesses are entitled to *Miranda* warnings prior to testifying. *See, e.g., United States v. Washington*, 431 U.S. 181, 186 (1977), citing *Counselman v. Hitchcock*, 142 U.S. 547 (1892). And even if a witness subpoenaed to the grand jury is required to be given *Miranda* warnings, Boayue's appearance at the prosecutor's office that day was not pursuant to a subpoena. Instead, Boayue voluntarily met with Scheerer several days prior to the date she was subpoenaed to

No. 18AP-972

appear, and she was not interviewed under oath or before the grand jury itself. *Compare with State v. Cook*, 11 Ohio App.3d 237, 241 (6th Dist.1983) (putative defendant testifying before grand jury was required to be warned of constitutional privilege to refuse to answer any possibly incriminating question, that incriminating statements made can be used against the putative defendant in a subsequent prosecution, and that he may consult with an attorney outside the grand jury room). Boayue's meeting with Scheerer was brief and informal, and she was absolutely free to leave at any time. In short, as Boayue herself observes, this case "do[es] not involve the issue as to whether an accused was in custody at the time the statements and admissions were elicited." (Appellee's Brief at 11.) Boayue was not in custody, and the grand jury subpoena standing alone is not a basis for suppression of her voluntary statements.

{¶ 14} Based on the foregoing, we conclude the trial court erred in its analysis of Boayue's motion to suppress and in its decision to grant that motion. For these reasons, the State's sole assignment of error is sustained, the judgment suppressing evidence is reversed, and this case is remanded to the Franklin County Court of Common Pleas for further proceedings consistent with law and this decision.

*Judgment reversed and cause remanded.*

KLATT and LUPER SCHUSTER, JJ., concur.