[Cite as *State v. Ferguson*, 2024-Ohio-1239.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 8-23-14

v.

JACOB C. FERGUSON,

O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 22 04 0082

Judgment Affirmed

Date of Decision:  April 1, 2024

APPEARANCES:

    *William T. Cramer* for Appellant

    *Nathan Yohey* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Jacob C. Ferguson ("Ferguson") appeals the judgment of the Logan County Court of Common Pleas, alleging that the trial court erred by denying his motion to suppress the statements he made to the police. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} R. is Ferguson's daughter and was roughly eight to nine years old at the times of the incidents that gave rise to the charges in this case. While R. resided with her mother in Defiance County, she would visit her father every other weekend where he lived in Logan County with the two sons that he had with his fiancée. On March 22, 2022, R. was taken to the hospital for an examination after she alleged that Ferguson had been sexually abusing her. Her testimony indicated that these acts of abuse occurred on more than ten but less than twenty occasions.

{¶3} R. explained that, when she went to her father's house for a weekend visit, he would call her into the bathroom, jam the door with a hairbrush, and have her take off her pants. She reported that Ferguson would then insert his genitalia variously into her anal cavity, vaginal cavity, or oral cavity. R. indicated that these acts of abuse occurred while Ferguson's fiancée was at work and his sons were watching television or playing in another room. R. also testified that Ferguson told her not to tell anyone about what had been occurring.

-2-

{¶4} During a physical examination, a forensic nurse at ProMedica Hospital, Natalie Jones ("Jones"), observed "abnormal tissue" in R.'s vaginal area and an abnormal vaginal discharge. (Trial Tr. 126-127). Jones also located abnormalities in R.'s hymenal tissue but did not find any injuries to her anal cavity. Dr. Randall S. Schlievert later testified as an expert in child sexual abuse and stated that, aside from sexual abuse, he "s[aw] no other explanation" for what was observed during R.'s physical examination. (Trial Tr. 185).

{¶5} After R.'s examination, Defiance County Children's Services notified Detective Adam Wood ("Detective Wood") of the Logan County Sheriff's Office about R.'s allegations. On March 29, 2022, law enforcement arrested Ferguson at his house and took him into police custody. Roughly one hour later, Ferguson sat for a recorded interview at the sheriff's office with Detective Wood and Detective Mike Brugler ("Detective Brugler").

{¶6} Before asking any questions, Detective Brugler presented Ferguson with a written form that detailed his *Miranda* rights and then read the contents of this form out loud. Ferguson then signed a waiver of his *Miranda* rights. During this interview, Ferguson initially denied R.'s allegations. In response, the police noted that Ferguson did not appear to be shocked after hearing about the findings from R.'s physical examination or the content of her allegations.

{¶7} Shortly thereafter, Ferguson said, "I'm going to get at least eight years for that sh*t." (Oct. 21 Tr. 34). After further questioning, he admitted that he "put it in her butt a couple times, but I never put it in her vagina or nothing." (*Id*. at 39). Ferguson then stated that his genitalia would not go "more than halfway" into R's anal cavity. (*Id*. at 41). He also indicated that, during these situations, R. was either laying down "or on her knees." (*Id*. at 50). Ferguson again stated that he had never penetrated his daughter's vaginal cavity, affirming that his actions were limited to "anal[] or oral" penetration. (*Id*. at 51).

{¶8} Ferguson also confirmed that these instances of abuse occurred in the bathroom at his house while his fiancée was at work and his boys were occupied in another room. However, he denied using a hairbrush to keep the bathroom door shut. Ferguson initially stated that the abuse occurred on four occasions. The police pointed out that, during her interview, R. "ma[de] it sound" as though these acts occurred "probably a dozen times." (Oct. 21 Tr. 57). In response, Ferguson indicated that the abuse could have happened "[m]aybe a dozen times * * *." (*Id*. at 57). However, he ultimately concluded that the abuse occurred on ten occasions.

{¶9} On April 13, 2022, Ferguson was indicted on twelve counts of rape in violation of R.C. 2907.02(A)(1)(b). Each of these charges was a first-degree felony. On August 24, 2022, Ferguson filed a motion to suppress various statements that he made to law enforcement during his interview at the sheriff's office. On October

21, 2022, a hearing was held on this motion. The trial court subsequently denied Ferguson's motion to suppress.

{¶10} A jury trial was held on these charges on May 4, 2023. The trial court permitted the recorded interview between the detectives and Ferguson to be played for the jury over an objection from the Defense. After the State rested, the trial court granted the Defense's Crim.R. 29 motion as to the eleventh and twelfth counts of rape in the indictment. The jurors returned verdicts of guilty on the remaining ten charges. The trial court issued its judgment entry of sentencing on June 6, 2023.

*Assignment of Error*

{¶11} Ferguson filed his notice of appeal on June 20, 2023. On appeal, he raises the following assignment of error:

> **Appellant's rights to counsel and due process under the state and federal constitutions were violated by the admission into evidence of an involuntary confession.**

Ferguson asserts that the trial court erred in denying his motion to suppress, arguing that several coercive statements made by law enforcement at the recorded interview rendered his admissions involuntary.

*Standard of Review*

{¶12} On appeal, "motions to suppress present 'mixed questions of law and fact.'" *State v. Kerr*, 3d Dist. Allen No. 1-17-01, 2017-Ohio-8516, ¶ 18, quoting

*State v. Yeaples*, 180 Ohio App.3d 720, 2009-Ohio-184, 907 N.E.2d 333, ¶ 20 (3d Dist.).

> At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. [*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8]. * * * When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8 * * *.

(Citations omitted.) *State v. Harpel*, 3d Dist. Hardin No. 6-20-03, 2020-Ohio-4513, ¶ 16, quoting *State v. Sidney*, 3d Dist. Allen No. 1-19-32, 2019-Ohio-5169, ¶ 8. "Accepting [the trial court's findings of] fact[ ] as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. James*, 2016-Ohio-7262, 71 N.E.3d 1257, ¶ 8 (3d Dist.), quoting *Burnside* at ¶ 8.

### Legal Standard

{¶13} "[V]oluntary confessions are always admissible * * *." *State v. Chase*, 55 Ohio St.2d 237, 246, 378 N.E.2d 1064 (1978), quoting *Rufer v. State*, 25 Ohio St. 464, 470 (1874). However, "[c]onstitutional principles of due process preclude the use of coerced confessions as fundamentally unfair, regardless of whether the confession is true or false." *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.3d 365, ¶ 31. "The 'test for voluntariness is whether, in light of the totality of the circumstances, the police obtained the incriminating statements by coercion or

improper inducement.'" *State v. Winger*, 3d Dist. Marion No. 9-17-12, 2017-Ohio-7660, ¶ 8, quoting *State v. Arrington*, 14 Ohio App.3d 111, 114, 470 N.E.2d 211 (6th Dist. 1984).

**{¶14}** Under this test, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 77, quoting *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). "Coercive police tactics include 'physical abuse, threats, or deprivation of food, medical treatment, or sleep.'" *State v. Pulley*, 2d Dist. Montgomery No. 29501, 2023-Ohio-3277, ¶ 60, quoting *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 35.

**{¶15}** Further, "a confession 'must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Winger* at ¶ 8, quoting *Arrington* at 114.

> 'The line to be drawn between permissible police conduct and conduct deemed to induce or tend to induce an involuntary statement does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police.' * * * [*People v. Flores*, 144 Cal.App.3d 459, 192 Cal.Rptr. 772, 776-777 (1983).]
>
> 'When the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct, we can perceive nothing improper in such police activity. On the other hand, if in addition to the foregoing benefit, or in the place thereof, the defendant is given to understand that he might reasonably expect

> benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible. The offer or promise of such benefit need not be expressed, but may be implied from equivocal language not otherwise made clear.' [*People v. Hill*, 66 Cal.2d 536, 549, 58 Cal.Rptr. 340, 426 P.2d 908 (1967)].

*Winger* at ¶ 8, quoting *Arrington* at 115. *See also State v. Leonard*, 2017-Ohio-1541, 89 N.E.3d 58, ¶ 19 (4th Dist.).

{¶16} Since "'police overreaching' is a prerequisite to a finding of involuntariness," the "appellant must first demonstrate that the detectives used an inherently coercive tactic before the court must address the totality of the circumstances." *State v. Matthews*, 10th Dist. Franklin No. 19AP-105, 2019-Ohio-4952, ¶ 15, quoting *Connelly* at 163. If the appellant demonstrates that coercive tactics were used,

> an appellate court must determine whether the totality of the circumstances surrounding the confession indicates that a defendant's 'will was overborne and his capacity for self determination was critically impaired because of coercive police conduct.' *State v. Hazlett*, 3d Dist. No. 8-06-04, 2006-Ohio-6927, ¶ 13.

*State v. Tussing*, 3d Dist. Logan No. 8-10-11, 2011-Ohio-1727, ¶ 33. In this analysis, relevant considerations include "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *Id*.

**{¶17}** "Upon a challenge to the admissibility of a confession, the prosecution must prove the voluntariness of the statements by a preponderance of the evidence." *Winger*, *supra*, at ¶ 8. "'Preponderance of the evidence' means the greater weight of the evidence." *State v. Gillespie*, 3d Dist. Paulding No. 11-16-07, 2017-Ohio-6936, ¶ 49. Further, "[t]he question of whether a statement is voluntary is a question of law which we review de novo." *State v. Baoyue*, 2020-Ohio-549, 152 N.E.3d 423, ¶ 9 (10th Dist.). "De novo review is independent" and is conducted "without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27.

Legal Analysis

**{¶18}** On appeal, Ferguson identifies two instances in which he alleges that the police used coercive tactics during the March 22 interview. The first exchange he identifies reads as follows:

> Detective Brugler: So you and [your fiancée] * * * have two boys together. Do you have any other kids?
>
> Ferguson: No. Just the three.
>
> Detective Brugler: Okay. Well, obviously, we want to leave [your fiancée] * * * and the boys out of this investigation. So, Children's Services, they're going to kind of, I guess, go off of [Detective] Adam [Wood] and I's opinion, if you will, and—but I think right now we—we all feel like there's no real reason to—to remove your boys anyway.
>
> Ferguson: Right, yeah.

Detective Brugler:  Plus we don't want to do that to [your fiancée] *
* *.  She's upset enough.

(Oct. 21 Tr. 23-24).   Ferguson argues that Detective Brugler's references to his family members and children's services constitute a coercive tactic under *Lynumn v. Illinois*, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963).

{¶19} In *Lynumn*, the defendant was a mother who was arrested after she sold drugs to a confidential informant.  *Lynumn* at 529.  During questioning, she initially denied selling the drugs.  *Id*. at 530.  However, the mother later testified about the interview with law enforcement as follows:

> [A police officer] started telling me I could get 10 years and the children could be taken away, and after I got out they would be taken away and strangers would have them, and if I could cooperate he would see they weren't; and he would recommend leniency and I had better do what they told me if I wanted to see my kids again. The two children are three and four years old. Their father is dead; they live with me.

*Id*. at 531.  A police officer testified that the mother was also told that her children would lose state-funded benefits.  *Id*. at 533.  After this discussion, the mother said she had sold the drugs.  *Id*. at 532.  Finding that "[t]he police officers did not deny that these were the circumstances under which" the mother confessed, the United States Supreme Court concluded that her confession was "not voluntary, but coerced." *Id*. at 532, 534.

**{¶20}** The facts in *Lynumn* stand in contrast to those in the case presently before us. "First—and most importantly," we note that "*Lynumn* pre-dated *Miranda*." *Loza v. Mitchell*, 766 F.3d 466, 480 (6th Cir. 2014), citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Unlike the mother in *Lynumn*, the police informed Ferguson of his *Miranda* rights orally and in writing. Ferguson then chose to sign a waiver of these rights. *See also Michael v. Butts*, 59 F.4th 219, 229 (6th Cir. 2023) (distinguishing *Lynumn*, in part, because the mother never received *Miranda* warnings and holding that "when a suspect receives *Miranda* warnings it is 'rare' that his confession will be deemed coerced").

**{¶21}** In *Lynumn*, the police also told the mother that she would lose her children and state-funded benefits *unless* she cooperated, thereby securing leniency from law enforcement. *Lynumn* at 531. In the statement challenged by Ferguson, Detective Brugler indicated that law enforcement did *not* see a reason for children's services to take custody of Ferguson's boys. The police also did not indicate that custody of his sons would be negatively affected *if* Ferguson did not cooperate or confess. *See State v. Graham*, 2d Dist. Montgomery No. 29427, 2022-Ohio-2600, ¶ 33. These statements also do not include "false promises" of leniency that could have potentially induced incriminating admissions from Ferguson. *Id*. at 31-32, quoting *State v. Petitjean*, 140 Ohio App.3d 517, 534, 748 N.E.2d 133, (2d Dist. 2000).

{¶22} For similar reasons, two other decisions that Ferguson cites in his brief are also distinguishable. *State v. Lowery*, 4th Dist. Washington No. 92 CA 24, 1993 WL 289839, \*1 (July 26, 1993) and *U.S. v. Tingle*, 658 F.2d 1332, 1334 (9th Cir. 1981). In *State v. Lowery*, the Fourth District found a confession was not voluntary where the defendant was told that she "could lose her children *if* she did not cooperate." (Emphasis added.) *Lowery*. at \*1. In *U.S. v. Tingle*, the Ninth Circuit found that a confession was involuntary where the defendant was told "that, *if* she failed to cooperate, she would not see her young child for a long time." (Emphasis added.) *Tingle* at 1334. As noted in our analysis of *Lynumn*, Detective Brugler did not suggest that custody of Ferguson's sons would be negatively affected *if* he did not cooperate with law enforcement.

{¶23} We also note that Detective Brugler's statements indicated that Ferguson's fiancée and his two sons were outside the scope of the investigation. Far from threatening Ferguson's relatives, this statement began with the police indicating that they were going to leave his family members alone. In several leading cases where mentioning relatives in an interview was found to be coercive, the statements generally referenced pulling family members into the investigation. *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) (holding that the threat to bring in the defendant's ailing wife for questioning was coercive);

*U.S. v. Finch*, 998 F.2d 349, 355 (6th Cir. 1993) (holding that "threats to arrest members of a suspect's family may cause a confession to be involuntary").

{¶24} Next, the second portion of the March 22 interview that Ferguson identifies on appeal is a statement from Detective Brugler that reads, in its context, as follows:

> Detective Wood: Specifically, so she [R.] told grandma and the interviewer that she's scared of going to the bathroom at your house because of what's happened there.
>
> Jacob Ferguson: But I never followed her in the bathroom. I've never put my thing in her vagina or nothing. Ever.
>
> * * *
>
> Detective Wood: Then help us understand what she's talking about. What is close to—even if it's something she's misunderstanding. Help us understand what she's talking about.
>
> Jacob Ferguson: I don't know.
>
> Detective Wood: Are you—are you helping her take a bath?
>
> Jacob Ferguson: When I help her, I help her rinse, I help her wash soap out of her hair, I help her dry her hair. I always wrap her up in a towel and tie it real tight. I mean, I'm always making sure she's got clothes on, the boys always got clothes on.
>
> Detective Wood: I can tell you this. I'm a dad. He's a dad. Everybody in here's a dad. So we all have kids. We all understand this.
>
> Jacob Ferguson: Right.

Detective Wood:  If I was sitting in your chair and somebody just told me that my daughter's being sexually assaulted or raped or has been raped, I'm on fire.

Jacob Ferguson:  Right.

Detective Wood:  You're not even shocked, Jacob.

Jacob Ferguson:  Well, I've been hearing about this for two months now.  I've been crying for two months just thinking about, like, what the hell's going on and everything.

Detective Brugler:  Jacob, here's my thing.  You know as well as anybody that there's—you're—you're in a fork in the road.  This fork, if you decide to go down this road, the road you're going down now denying all of this, this is going—it's going to suck.  It's going to suck for you.  It's going to suck for you and it's going to suck for your daughter.  Which I—

Jacob Ferguson:  Right.

Detective Brugler:  You know, according to your daughter, she—you know, she loves you.

Jacob Ferguson:  Right.

Detective Brugler:  *If you go down this road, this is the road that I'm able to go to my boss and the prosecution and anybody else that's involved in this case and say, look, this is what happened.*  This is—I have to make them understand, okay?  I have to give them a reason.  And, you know, if Jacob's remorseful, if Jacob is having issues that are flaring up from his past, then there's things that we can do.

(Emphasis added.)   (Oct. 21 Tr. 33-34).[1]   This exchange began with the police

asking Ferguson about whether R.'s allegations could possibly be explained by any

---

[1] The italicized portion of this exchange is what Ferguson challenges on appeal.

-14-

activity other than sexual abuse. After Ferguson did not provide an alternative explanation, the police proceeded to ask whether he wanted to continue to deny the allegations.

> In contrast to misstatements of law and false promises of leniency, admonitions to tell the truth are not unduly coercive. * * * A police officer's assertion to the suspect that he or she is lying or that the suspect would not have another chance to tell his or her side of the story does not automatically render a confession involuntary.

(Citations omitted.) *State v. Navarez-Reyes*, 2d Dist. Montgomery No. 27047, 2017-Ohio-2610, ¶ 35.

> 'Officers may discuss the advantages of telling the truth, advise suspects that cooperation will be considered, or even suggest that a court may be lenient with a truthful defendant.' *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 111 * * *. And '[a]dmonitions to tell the truth are considered to be neither threats nor promises.' *State v. Loza*, 71 Ohio St.3d 61, 67, 641 N.E.2d 1082 (1994) * * *.

(Citations omitted.) *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 198. In the second identified statement, the police admonished Ferguson to tell the truth and discussed the consequences of the choices that he faced at that moment. *See Id.*, at ¶ 199-200; *State v. Adkins*, 4th Dist. Scioto No. 10CA3367, 2011-Ohio-5360, ¶ 48. Having examined the contents of the record, we conclude that the police were not using inherently coercive tactics in the two statements identified by Ferguson.

{¶25} Even if the identified statements did constitute coercive tactics, the totality of the circumstances does not suggest that Ferguson's will was overborn or that his capacity for self-determination was critically impaired. *Hazlett*, *supra*, at ¶ 13. At the time of the interview, Ferguson was thirty years old. Detective Brugler testified that Ferguson was able to understand the questions and indicated that he seemed to have a "normal" level of intelligence. (Oct. 21 Tr. 77). Detective Wood also testified that Ferguson did not appear to be impaired during this interaction. Ferguson had prior experience with law enforcement, indicating at the interview that his admissions to the police in a previous interrogation almost led to him being charged with "50 counts of rape." (*Id*. at 43).

{¶26} Further, Ferguson began giving his confession roughly twenty-five minutes into the first interview he had with the police. The recorded interview occurred in the sheriff's department roughly one hour after he had been arrested. The tone between Ferguson and the two detectives remained conversational for the entire discussion. The record contains no indication that Ferguson experienced any physical deprivation or mistreatment. As noted previously, the police did not make threats or false promises. *See also State v. Bencic*, 9th Dist. Summit No.16895, 1995 WL 256188, * 8 (May 3, 1995) (mentioning that law enforcement would have to contact children's services did not make a confession involuntary). Given the

totality of the circumstances, we do not conclude that Ferguson's confession was involuntary. Accordingly, his sole assignment of error is overruled.

*Conclusion*

{¶27} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Union County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**WALDICK and MILLER, J.J., concur.**

**/hls**