[Cite as *State v. Shay*, 2025-Ohio-71.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
CRAWFORD COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,

  v.

JEFFREY SHAY,

      DEFENDANT-APPELLANT.

CASE NO. 3-24-16

O P I N I O N

Appeal from Crawford County Municipal Court
Criminal/Traffic Division
Trial Court No. 23 TRC 3039

Judgment Affirmed

Date of Decision:  January 13, 2025

APPEARANCES:

    *Howard A. Elliott* **for Appellant**

    *Thomas F. Meagher V* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Jeffrey M. Shay ("Shay") appeals the judgment of the Crawford County Municipal Court, arguing that the trial court erred by denying his motion to suppress and that his conviction for operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI") is not supported by sufficient evidence and is against the manifest weight of the evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} At around 2:00 A.M. on September 23, 2023, Sergeant Andrew Shellhouse ("Sergeant Shellhouse") of the Ohio State Highway Patrol was stopped at an intersection in his cruiser when he observed Shay's vehicle across the roadway. After Shay flashed his "brights" at this intersection, Sergeant Shellhouse began to follow his vehicle. Sergeant Shellhouse testified that, as they approached an intersection with a stop sign, he observed Shay's vehicle cross the white stop bar and pass into the crosswalk. Sergeant Shellhouse testified that, by the time Shay's vehicle came to a halt, "the rear tires were on the stop bar." (Tr. 64).

{¶3} After Shay turned right at the intersection, Sergeant Shellhouse initiated a traffic stop. On approaching the vehicle, he observed that Shay's "eyes were bloodshot and glassy"; that Shay's "speech was slow and slurred"; and that "there

-2-

was a six pack of Budweiser sitting on the passenger's side of the vehicle" that only contained five cans. (Tr. 68). During their conversation, Shay admitted that he had several drinks that night and had been to a bar. Shortly after the traffic stop was initiated, Trooper Sarah Kliesch ("Trooper Kliesch") arrived at the scene to assist Sergeant Shellhouse. She asked if Shay would be willing to take several field sobriety tests.

{¶4} Trooper Kliesch then administered a Horizontal Gaze Nystagmus Test ("HGN Test") and observed him display six of the six potential clues. She also observed Shay stray from the marked line while taking the "walk and turn test." (Tr. 96). After the field sobriety tests, Shay was placed into custody and taken to the local State Highway Patrol Post where he voluntarily took two breath tests. The Intoxilyzer 8000 gave blood alcohol readings of 0.116 and 0.118. During the inventory search of Shay's vehicle, law enforcement located an open beer can on the floorboard and "some suspected marijuana * * *." (Tr. 71-72).

{¶5} On September 27, 2023, Shay was charged with one count of OVI in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor; one count of OVI in violation of R.C. 4511.19(A)(1)(d), a first-degree misdemeanor; and one count of failure to stop or yield at a stop sign in violation of R.C. 4511.43(A), a minor misdemeanor. On December 5, 2023, Shay filed a motion to suppress, arguing that

the police did not have legal grounds to conduct a traffic stop. The trial court denied Shay's motion to suppress.

**{¶6}** A jury trial commenced on April 26, 2024. The recordings from Sergeant Shellhouse's dashboard and body cameras were introduced into evidence. Shay was found guilty of all three charges. After the trial court concluded that his two OVI convictions merged, Shay only received a sentence for his violation of R.C. 4511.19(A)(1)(d). The trial court issued its judgment entry of sentencing on May 7, 2024.

**{¶7}** Shay filed his notice of appeal on May 17, 2024. On appeal, he raises the following two assignments of error:

**First Assignment of Error**

**The conviction of the Defendant, operating a motor vehicle under the influence of intoxicant was not supported by the manifest weight of the evidence nor the sufficiency of the evidence and must be reversed.**

**Second Assignment of Error**

**The trial court erred in denying the motion to suppress of the Defendant/Appellant and barring the case of all the evidence flowing from the traffic stop, because the State failed to meet its burden of persuasion with respect to the motion to suppress.**

We will consider the second assignment of error before we consider the first assignment of error.

*Second Assignment of Error*

**{¶8}** Shay argues that that the trial court erred by denying his motion to suppress because Sergeant Shellhouse did not have legal grounds to initiate a traffic stop.

Standard of Review

**{¶9}** On appeal, "motions to suppress present 'mixed questions of law and fact.'" *State v. Kerr*, 2017-Ohio-8516, ¶ 18 (3d Dist.), quoting *State v. Yeaples*, 2009-Ohio-184, ¶ 20 (3d Dist.).

> At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. [*State v. Burnside*, 2003-Ohio-5372, ¶ 8]. * * * When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8 * * *.

(Citations omitted.) *State v. Harpel*, 2020-Ohio-4513, ¶ 16 (3d Dist.), quoting *State v. Sidey*, 2019-Ohio-5169, ¶ 8 (3d Dist.).

> Accepting [the trial court's findings of] fact[] as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Bracketed text in original.) *State v. Ferguson*, 2024-Ohio-1239, ¶ 12 (3d Dist.), quoting *Burnside* at ¶ 8.

Legal Standard

**{¶10}** The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." U.S. Const., Amend. IV. The Ohio Constitution offers a parallel provision to the Fourth Amendment of the Federal Constitution that has been generally held to afford the same level of protection as the United States Constitution. *State v. Hoffman*, 2014-Ohio-4795, ¶ 11. "[A] police stop of a motor vehicle and the resulting detention of its occupants has been held to be a seizure under the Fourth Amendment." *Kerr*, 2017-Ohio-8516, at ¶ 13.

**{¶11}** "In order to initiate a constitutionally permissible traffic stop, law enforcement must, at a minimum, have a reasonable, articulable suspicion to believe that a crime has been committed or is being committed." *State v. Smith*, 2018-Ohio-1444, ¶ 8 (3d Dist.).

> Reasonable suspicion entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause.

*Harpel*, 2020-Ohio-4513, ¶ 13, quoting *State v. Jones*, 70 Ohio App.3d 554, 556-557 (2d Dist. 1990). The circumstances surrounding a traffic stop "are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must

react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 88-89 (1991). In this process, "[a] court reviewing the officer's actions must give due weight to his experience and training * * *." *Id*. at 88.

{¶12} "A police officer may initiate a traffic stop after witnessing a traffic violation." *Smith*, 2018-Ohio-1444, at ¶ 10. In turn, R.C. 4511.43(A) requires the following:

> Except when directed to proceed by a law enforcement officer, every driver of a vehicle * * * approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. * * *

"A driver's failure to comply with a stop sign is a traffic violation that provides a police officer with probable cause to initiate a traffic stop." *State v. Little*, 2020-Ohio-4097, ¶ 9 (3d Dist.).

{¶13} "To deter Fourth Amendment violations, the Supreme Court of the United States has adopted an exclusionary rule under which 'any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant.'" *Kerr*, 2017-Ohio-8516, at ¶ 17, quoting *State v. Steinbrunner*, 2012-Ohio-2358, ¶ 12 (3d Dist.). "For this reason, the appropriate remedy for a Fourth Amendment violation is generally the suppression of any illegally obtained evidence." *Little* at ¶ 10.

Legal Analysis

**{¶14}** At the suppression hearing, the State presented evidence that Sergeant Shellhouse was driving behind Shay's vehicle as he approached an intersection with a stop sign. Sergeant Shellhouse testified that, at this intersection, Shay "came to a complete stop past the white stop bar into the crosswalk." (Feb. 26 Tr. 10). He further testified that he could see that the "rear tires" of Shay's vehicle went "past that white solid stop bar." (*Id*. at 14). Sergeant Shellhouse affirmed that he initiated a traffic stop based on this traffic infraction. The State also played the footage of this incident from the dashboard camera in Sergeant Shellhouse's cruiser for the trial court.

**{¶15}** On appeal, Shay argues that it is hard to discern from the video footage whether he stopped his vehicle before or after he reached the white stop bar at the intersection. At the suppression hearing, Sergeant Shellhouse testified that, from his vantage point, he could see where Shay's vehicle was stopped in relation to the stop bar. He also indicated that he had a better visual of what transpired from his cruiser than what his dashboard camera was able to capture. After considering this evidence, the trial court "f[ou]nd that the Defendant failed to stop behind the marked stop bar" and that "[t]his finding is supported by both the arresting officer's testimony and the video of the traffic stop." (Doc. 28). Since this finding is

supported by some competent, credible evidence, we accept this factual determination as true. *See State v. Codeluppi*, 2014-Ohio-1574, ¶ 7.

**{¶16}** In turn, R.C. 4511.43(A) states that "every driver of a vehicle * * * approaching a stop sign shall stop at a clearly marked stop line * * *." In interpreting this language, this Court has held "that it is unlawful to stop astride a clearly marked stop line, and that a motorist must stop his or her vehicle prior to the point at which the front-most portion of his or her vehicle will break the plane of the outermost edge of that clearly marked stop line." *State v. Miller*, 2015-Ohio-3529, ¶ 24 (3d Dist.). *State v. Levine*, 2019-Ohio-265, ¶ 23 (4th Dist.). *But see State v. Drushal*, 2014-Ohio-3088, ¶ 12 (9th Dist.); *State v. Scott*, 2022-Ohio-2071, ¶ 26-29 (6th Dist.) (examining the various positions of Ohio's appellate districts on this issue).

**{¶17}** Since Shay did not stop his vehicle before crossing the stop bar at the intersection, he failed to comply with R.C. 4511.43(A). On observing this traffic infraction, Sergeant Shellhouse had the requisite legal justification to initiate a traffic stop of Shay's vehicle. *See State v. Carpenter*, 2023-Ohio-1702, ¶ 13 (3d Dist.); *Findlay v. Frenzel*, 2020-Ohio-4621, ¶ 13 (3d Dist.). Thus, we conclude that Shay's argument has failed to demonstrate that the trial court erred in denying his motion to suppress. Accordingly, the second assignment of error is overruled.

*First Assignment of Error*

**{¶18}** Shay argues that his OVI conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.

Legal Standard

**{¶19}** "A sufficiency-of-the-evidence analysis examines whether the State has carried its burden of production at trial." *State v. Reed*, 2024-Ohio-4838, ¶ 30 (3d Dist.). On review, an appellate court is not to consider whether the evidence at trial should be believed but whether the evidence, if believed, could provide a legal basis for the finder of fact to conclude that the defendant is guilty of the crime charged. *State v. Smith*, 2023-Ohio-3015, ¶ 19 (3d Dist.). Accordingly, the applicable standard "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *State v. Plott*, 2017-Ohio-38, ¶ 62 (3d Dist.).

**{¶20}** In contrast, "[a] manifest-weight analysis examines whether the State has carried its burden of persuasion at trial." *State v. Carroll*, 2024-Ohio-1626, ¶ 58 (3d Dist.). On review, "an appellate court's function * * * is to determine whether the greater amount of credible evidence supports the verdict." *State v. Harvey*, 2020-Ohio-329, ¶ 12 (3d Dist.), quoting *Plott* at ¶ 73.

> Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*State v. Randle*, 2018-Ohio-207, ¶ 36 (3d Dist.), quoting *Plott* at ¶ 73, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶21}** In this analysis, "the credibility of witnesses is primarily a determination for the trier of fact." *State v. Morris*, 2022-Ohio-3608, ¶ 41 (3d Dist.), quoting *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.). For this reason, deference must be given to the trier of fact regarding the credibility of witnesses. *State v. Sullivan*, 2017-Ohio-8937, ¶ 38 (3d Dist.). A trial court's judgment should be reversed "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction.'" *State v. Hunter*, 2011-Ohio-6524, ¶ 119, quoting *Thompkins* at 387.

**{¶22}** To establish an OVI conviction in violation of R.C. 4511.19(A)(1)(d), the State must prove that the defendant "operate[d] any vehicle * * * within this state" while "[t]he person has a concentration of eight-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath" R.C. 4511.19(A)(1)(d).

Legal Analysis

**{¶23}** At trial, Trooper Kleisch testified that, after Shay exited his vehicle, she administered the HGN Test and observed Shay display six out of six potential clues. She also testified that Shay voluntarily "blew into" an "Intoxilyzer 8000" two times at the station. (Tr. 102). The resulting readings from these two tests were 0.116 and 0.118 when the legal limit is a blood alcohol content of 0.08. Having examined the evidence in a light most favorable to the State, we conclude that a reasonable trier of fact could find from this evidence that Shay had committed a violation of R.C. 4511.19(A)(1)(d). Accordingly, Shay's OVI conviction is supported by sufficient evidence.

**{¶24}** We turn now to Shay's manifest weight challenge. At trial, Sergeant Shellhouse testified that he observed that Shay's eyes were bloodshot and glassy. He also detected the odor of an alcoholic beverage emanating from Shay's person and saw a six pack of beer with a missing can on the front seat of the vehicle. On cross-examination, Trooper Shellhouse affirmed that he did not observe Shay driving erratically by driving left of center or speeding. Defense counsel also asked Trooper Kleish about the general accuracy of the field sobriety tests in detecting intoxication. He also questioned her about the potential challenges that are involved in completing these field sobriety tests at 2:00 A.M. on the side of a roadway.

{¶25} Further, Shay testified in his own defense at trial. He stated that he did not drink the beer from the opened beer can that was next to him in his vehicle. He also affirmed that he did the field sobriety tests to the "best of [his] * * * ability." (Tr. 142). While he admitted that he had four beers earlier that evening, Shay stated that he "wasn't impaired until" they "got to the station with that, that Breathalyzer test." (Tr. 147). He also admitted to stopping at a bar called the "Crazy Fox" at roughly 2:00 A.M. because he could not buy beer elsewhere at that time and wanted "[t]o have beer at home." (Tr. 151, 153).

{¶26} Having examined the evidence in the record on the basis of its weight and credibility, we find no indication that the jury lost its way and returned a verdict that was against the manifest weight of the evidence. Accordingly, the first assignment of error is overruled.

### Conclusion

{¶27} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Crawford County Municipal Court is affirmed.

**Judgment Affirmed**

**WALDICK, P.J., and MILLER, J., concur.**

**/hls**